Our next case this morning is case number 416-0296, The People of the State of Illinois v. Stephen Berry. And for the appellant, we have Mr. Kimmel, and for the appellee, we have Mr. Escalera. Is that how you pronounce that, sir? Okay. You may proceed, counsel. May it please the court. Counsel, I'm Jaron Kimmel, and on behalf of the Office of the State Appellate Defender, I represent Stephen Berry. In this case, the lower court not only failed to inquire about Mr. Berry's oral, post-plea claims of ineffective assistance of counsel, it also actively precluded and dissuaded Mr. Kimmel from any further inquiry. It also precluded him from making those claims by repeatedly changing the subject and eventually telling him to stop talking about ineffective assistance of counsel. That was wrong. This court should now remand for the preliminary claimful inquiry that should have happened below. What was the red flag that went up when the judge should have first began an inquiry? I think when defense counsel himself started things off by suggesting, hey, your honor, maybe you should do a frankful inquiry. And even that was ignored by the lower court. And so I think that's deeply problematic, what happened here. It doesn't need to be a long inquiry. It seems like the court maybe was frustrated by Mr. Berry, but the court could have inquired of defense counsel about his claims. Hey, what happened? It doesn't take very long. But I think our Supreme Court and People v. Ayers and the many other cases on this issue have made crystal clear that these inquiries need to happen when this type of allegation is made as a prophylactic measure. And Mr. Kimmel, in Ayers that you mentioned, they talk about when a defendant brings a clear claim asserting ineffective assistance of counsel. Of course, we know we didn't hear the words ineffective assistance of counsel. We heard poor service. But was there a clear claim asserted here? I think there absolutely was, your honor. Even if we just look at the phrase that the state has focused on, the summary of this was poor service. Even if that's all that Mr. Berry had said, I think under Ayers that would be enough. Because we know that there's no magic words for Frankl. He doesn't have to say the phrase ineffective assistance of counsel, which were the three words that were said in Ayers. It can be anything. Under People v. Moore, it just has to put the claim before the trial court. There are situations where the claim is so unclear, as in this court's case of People v. Shaw, where it's just incoherent rambling. You couldn't tell what the person was talking about. That's a very different situation. That's the type of ambiguity that we're talking about. This is not ambiguous. This is clear. The state makes the argument that Mr. Berry has abandoned this claim, when at the end of this hearing he chose not to withdraw his plea. But there's a number of problems with that argument. I think the biggest problem is that this supposed waiver is built on consultation with impartial counsel. He's going off the record multiple times to talk things over with the very person he's claiming has not represented him properly. And this is the type of situation that Frankl has designed to prevent happening. I would note that when Mr. Berry explained that he did not want to withdraw the plea, he did so specifically on the basis that he was frustrated with his attorney. He said, I feel like I'm alone. This is after coming back on the record again after consultation. He says, I feel like I'm alone. And that's essentially a chronic claim. Even though counsel is standing right there, he feels like he's actually representing himself. Of course, we hear that a lot from defendants. But isn't it correct, though, that he had been in court with his attorney on 11 occasions? I don't know the precise number. It wasn't quite a few. The problem is, the heart of his claim is that he didn't talk to him enough before the plea. His first, fifth hearing is the day before the plea hearing. And Mr. Berry's claim is that his counsel, the day before trial, told him, we're going to trial. And he had hardly spoken to him at all. And he said, I'm not comfortable going to trial like that. So by my count, that means there were two status hearings where Mr. Lewis was on the case before that last status the day before the plea hearing. And that's simply not represented in the record. We don't have a record of how well or how often counsel actually spoke with his client. It's not enough that he showed up for two hearings. It wasn't just two hearings, 11. And I think he met with him at the jail also on at least one occasion. And Mr. Berry says, he corrects himself, he says, he never spoke to me. And he says, actually, there was one time he spoke to me, one time. Obviously, his attorney spoke to him more than one time if he was in court with him on 11 occasions. I wonder about that because, of course, I'm thinking back to when I was on the trial court and we have status hearings or pre-trial hearings. They're not a substitute for a meeting with your client. They're fast-paced. Your case is called. You come up, if you're in the jail, you come out of the jury box and you come up and your attorney's standing there. Frequently, there really is no opportunity to have any meaningful conversation with your client because usually us, the judges, we're ready to keep this moving forward. I think that's correct, Your Honor. And that was somewhat what I wanted to distinguish, Justice Bowman. I think there's people versus mourning. This court's decision for 2016 makes clear what type of claims are suitable for rejection on their face by other information in the record. There's simply not enough in the record here beyond the fact that they showed up for the hearing. We don't know what they talked about off the record before or after or if those discussions occurred at all. As Your Honor noted, these status hearings are often very quick. They're over and that's all that occurs. And to be suitable for rejection on their face under mourning, we need to have those conversations in the record and we simply don't. And I think this all comes back to the purpose of Crankle. The purpose of this inquiry is for the trial judge to make a record, to inquire even briefly to find out if there's any there or there on these claims. And if there isn't, that's the end of it. That didn't happen here and it should have. And that's a problem. And under Ayers and these litany of cases, it's clear that this needs to go back so that that preliminary inquiry can occur. I'll just say briefly, the State also argues that these claims are ambiguous, unclear, or amenable to other interpretations which are kind of shades of the same argument. And I think that's wrong. I think it's clear that this was a claim of ineffective assistance to counsel, as even trial counsel pointed out. Should the trial court factor in the quality of the agreement and the potential likelihood that this was something that would be a favorable disposition to the defendant in terms of this really is, this is the first time we're hearing about what happened. During plea negotiations. Or prior, immediately prior to trial. Does the trial court factor that in, in terms of how likely it is that he was dissatisfied? Or is that something that you have to inquire into? I know I would have been thinking about, you're bringing it up now, yet a number of charges were dismissed that had you been convicted on, including a burglary, identity theft, subsequent to earlier convictions, you'd be getting a lot heavier time than what you received. And you've got it to be returned to the court because of failure to comply with the certificate. And now we're hearing about this. And you're not very articulate about this. Though the magic word is spoken by the attorney. I mean, are those things that an experienced trial judge should consider? Or is it okay to think about them? Or does it still require you to say, okay, you've said crankle. He said lack of service or poor service. I better inquire further. I know you're going to opt for the latter, but I'm kind of thinking out loud to myself. Well, I think it's absolutely a relevant consideration. The problem is the part and the piece in the process where that consideration should come in is the second part of crankle. What's the next part? And I think that all goes to whether this is a frivolous argument under Strickland or not. I think it's clear from the record that the trial court was frustrated by Mr. Berry. He's dumbing up the works. He's slowing things. This is frustrating. You again. Right. I've seen this before. And it may be that that would have been the end result that was reached after the preliminary crankle inquiry. But it may not have been. And that's the point. We don't know whether there was something there or not because the court didn't inquire. And again, the court can inquire of defense counsel. If this is a problem defendant that the court is so frustrated with that it can't even inquire of that person, you can ask defense counsel, is there any truth to these allegations? What you certainly cannot do, though, is stop Mr. Berry from talking about it and tell him he can't talk about this anymore. Even under the heirs' dissent, which is not the law of the land, that was the rule they advocated for. They mentioned something in a footnote very closely related. Yeah. Even if you shouldn't inquire, you certainly can't tell the defendant to stop talking about it. And this is the poster child for that alternative rule, which would have also barred what happened here. Is the record established we're talking about the same attorney? As far as? Trial and now. Well, he was the plea attorney. Ron Lewis, I think the first hearing he appears at is December 29th and then March 6th was the plea hearing. He's listed as counsel for all the hearings throughout, as well as the post-plea matters. It's been a long time ago, but so that we clear up the anecdotal record, my experience in McLean County, but that was a lot longer ago, was that unless you were the only public defender available at that moment, that very often conferences occurred in a conference room after you'd had the status hearing. And then another PD stepped up and handled whatever the next status hearing was. So there often was time. That's where a lot of conversations occurred, if it was live. And I think only arraignments are done. But we're going, you know, my anecdotal history is much more ancient than Justice Holder's. Well, I'm from Macon County. That probably varies county by county when you're starting to look at how many times has the guy been in court. Sometimes that's meaningful, sometimes it's not. Right. And that's the type of answer that might have been produced. True. The only other thing I would point out that I think is important on the waiver argument is Mr. Berry is arguing, you know, against the attorney he's consulting with off the record, back on the record. When he says that he doesn't want to withdraw his plea, that's consistent with what he said, that he didn't want to go to trial with this attorney. So if he's not allowed to argue ineffective assistance counsel and get a new attorney, the motion to withdraw the plea would just return him to the initial place he didn't want to be in, which was going to trial with this attorney. So it's not necessarily that he was saying, I don't want to withdraw my plea, period. The fact that he said, just give me the motion to reconsider and let's take this up on appeal, he's talking about his ineffective assistance claim because he was prevented from getting a new attorney. And that's what needs to happen now, at least the initial inquiry to determine if there's anything there. So for this reason, all these reasons, this court should remand for initial, practical inquiry. Thank you. Thank you, counsel. Mr. Escalera. May it please the court, counsel. Good morning, your honors. I am Rosario Escalera and I represent the appellate prosecutor's office here in Springfield. Your honors, this case is relatively straightforward and as my mom used to say, you can't eat your cake and have it too. This case demonstrates this point and the trial judge even stated that later on. I'll illustrate this by the record. This case started with a remand and then counsel filed that certificate when they came back for the hearing. Now during this hearing, the court stated the defendant was there for either one or two reasons. It was either for a motion to reconsider his sins or a motion to vacate his guilty plea. Now it was at this point where the defendant stated, I never told my attorney about withdrawing my guilty plea. The court then stated he was there for one or two reasons. It's not to have a new trial. The defendant replied, I'm saying he never came and explained to me what the repercussions were about withdrawing my plea. Then the court then stated what the repercussions were if he were to withdraw his guilty plea and then he talked about the motion to reconsider. This is when the defendant asked for, or he asked, or the trial court granted a brief recess and then it came to the point where the defendant said, I want another hearing. And that's where the trial court was like, I get that. We know that you want another hearing. But if you want another hearing, and that's where he stated again, the repercussions of what would happen if he wanted to withdraw his guilty plea. The defendant acknowledged this. He said, I understand this. And that's where he moved to consider his motion to reconsider. At this point, this is where he abandons his crankle inquiry or any effective assistance of counsel because, like I said, he can't have his cake and eat it too. So counsel, are you saying that he either had to choose between asserting his ineffective assistance of counsel claim or his motion to reconsider or his motion to withdraw his plea of guilty? Yes, Your Honor. So either if the defendant wanted to withdraw his, or if the defendant wanted to continue with his motion to reconsider, he could have done that. Or he could have continued with his ineffective assistance of counsel and there might have been a crankle inquiry. But that's not what the defendant wanted. The defendant wanted to continue with his motion to reconsider because he knew the repercussions of what would happen. Does the experienced appellate defender say, my client, I think he's got something to say, but he's kind of mixing up some issues, and mention that the trial court might want to consider crankle? I mean, he apparently understood that there was more than a degree of unhappiness with his effectiveness in the sense that he's, you know, the guy says, he hasn't talked to me to even explain this motion, let alone what I want to complain about that happened at the plea. Your Honor, I would just say that it was more likely, you know, during this actual hearing when they went to the back, he, you know, he didn't, I think when the actual court service was, you know, part of that too, but, you know, just because saying, you know, he might have any, there might be any crankle hearing doesn't necessarily mean that the trial court should conduct a crankle hearing, Your Honor. It's just the defendant could have been more dissatisfied with his service, you know, there's numerous factors that, well, we obviously don't know about, but. But the court didn't inquire at all. No, Your Honor, because the trial court, it's the state's position that the trial court, you know, he actually did state, you know, the trial court stated, let's get back to ours, which is trying to have you focus on what you want, because you can't have your cake and eat it too. I think that it was at this point, the trial counsel thought, you know, maybe he did want to, you know, claim ineffective assistance to counsel, but, you know, practically speaking, if he wanted to, you know, I think if, it'd be practically speaking, if, you know, they were to go with this motion to, you know, like, what do you really want to do, you know, Your Honor? Counsel, can't a defendant file a motion to withdraw a plea of guilty based in part on ineffective assistance of counsel? Yes, Your Honor. So you really don't have to do one or the other, right? Correct. But the second that, once he did file his motion, once he decided, and he understood this point, once he decided to go forward with his motion to reconsider, there was just, there was no point of even conducting a crankle inquiry. Do you think it's reasonable to infer that, basically, the trial court kind of shut him down on the ineffective assistance in terms of saying, you can't have your cake and eat it too, and saying when he started talking about this dissatisfaction, the trial court said something along the lines of, you're on your own agenda, let's get back to what we're here for? I mean, I don't think, I don't think he was, you know, trying to do that to the defendant. I think he was just trying to ascertain what the defendant really wanted. He, like he said, you know, I really, like he said, I'm just trying to focus on what you really want. And if the defendant wanted to continue with his ineffective assistance of counsel, he could have. But he ultimately decided to go with the motion to reconsider. And then that, it was at that point where the defendant abandoned his claim. But he's ultimately deciding to go with the motion to reconsider after talking to the very attorney that he's complaining about. Correct, Your Honor, yes. And we don't know what they discussed. Right, Your Honor, and I want to, I agree with that, but, and then even after speaking with him, he said this is, you know, I want to go with this motion to reconsider. And going back to what, you know, his actual claim, he's like, I never spoke to the defendant. Well, the trial was not even set until the week after. And then when they were actually, he was in negotiations for the plea, that was a week before. There was no day before trial, Your Honors. He was never going to have a trial the day before he was going to go there. The actual trial was supposed to be set a week after. And then a couple, the week before, that's when he was actually, that's when he pled guilty. There was no day before, so. I would say that, it hardly. Doesn't that go to determining the validity of the ineffective assistance of counsel claim, not to whether or not you should make the inquiry? Yes, that is correct, Your Honor, yes. So, we can even say, based on this record, it is quite possible that defendant loses on a crank inquiry. But the question becomes, should there be one? Yes, Your Honor, I don't think there should be a crank inquiry, because he abandoned, and it wasn't clear, you know, poor service, what does that mean? So, if the defendant had said the things that he said in court, and added the words, ineffective assistance of counsel, would it have been clear then? I think those, I mean, there's no more magic words that are necessarily needed, but I mean, I don't think we need to state that, but the trial court, the trial court thought maybe he was there for a new trial. That's what he said, exactly after he was there for poor service. So, if the defendant thought, I mean, sorry, the trial court thought he was there for a new trial, why would he even need to conduct a crank inquiry? Well, because counsel suggested that there may be some dissatisfaction, and the defendant said he, you know, had poor service, and felt like he was there alone, and hadn't been talked to. I mean, aren't those things that suggest that that would have been appropriate? Your Honor, if that were to happen, I mean, that's what he claims, yes, but the trial court stated, you know, there was no reason, he thought it was a motion for a new trial. There's just, you know, I don't understand how the defendant can say that when, you know, if he's continuing to argue about ineffective assistance of counsel, then, you know, where do you go from there? So, in conclusion, we would ask this court to affirm the defendant's sentence and not remand for a crank inquiry. If there are no further questions. Thank you, counsel. Thank you. Any rebuttal, Mr. Kimmel? No, I do not. At this time, we'll take this matter under advisement and be in recess until the next case.